UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MM Home Builders, Inc.,
as assignee of Corporate 4
Insurance Agency,

    Plaintiff,

v.
                           **MEMORANDUM OPINION AND ORDER**
                           Civil No. 12-374 (MJD/SER)

Endurance American
Specialty Insurance Inc.,

    Defendant.
_____

    Roger L. Kramer, Kramer Law LLC, Counsel for Plaintiff.

    John M. Anderson, Jeanne H. Unger and Kerri J. Nelson, Bassford Remele, PA, Counsel for Defendant.
_____

This matter is before the Court on Defendant's motion for summary judgment.

## I.    Factual Background

Defendant Endurance American Specialty Insurance Inc. ("Endurance") issued professional liability insurance ("errors and omissions" or "E&O") to Corporate 4 Insurance Agency ("Corporate 4"). Corporate 4 provided insurance

1

services, advice and counsel regarding insurance to Plaintiff MM Home Builders, Inc. during all times relevant to this action and the underlying actions.

MM Home Builders is owned and controlled by Richard Lewandowski. In 2000, MM Home Builders completed a five-building, 38-unit townhome project. Lewandowski, in his individual capacity, began to purchase the townhome units from MM Home Builders, and by 2007, he and his wife owned all the units. Thereafter, Lewandowski retained a broker to sell the units, and an inspector to inspect the units. The inspector identified a number of construction defects that caused water intrusion and related mold and fungal problems.

After the construction defects were discovered, Lewandowski retained an attorney who sent a letter to MM Home Builders to formally notify the company of the major construction defects and related water intrusion damage, as well as indications of toxic mold. (Nelson Aff., Ex. N-2.) Lewandowski thereafter filed a lawsuit against MM Home Builders. (Id. Ex. A.) At that time, the only officers, directors, members, shareholders or employees of MM Home Builders were Lewandowski, as President, and his wife, as corporate Secretary.

In response to Lewandowski's suit, MM Home Builders brought a number of third-party claims against a number of subcontractors that worked on the

townhome project. MM Home Builders also tendered defense of the lawsuit to its insurers. One insurer, Granite States Insurance Company ("Granite States"), denied coverage. (Comp. ¶ 11.)

As the lawsuit progressed, Lewandowski was deposed as the corporate representative for MM Home Builders. (Nelson Aff., Ex. N.) He testified to his understanding of the scope of the mold damage and acknowledged that the damages sought were related to mold. (Id. at 25.) In addition, Lewandowski retained an expert who provided reports as to the extent of mold and fungus in the townhomes. (Id. at 21; Ex. N-7; Ex. N-8; Ex. N-9.)

The Lewandowskis eventually settled certain claims for $725,000. (Id. Ex. C at 3.) As part of the settlement, the Lewandowskis signed a release dismissing claims against MM Home Builders and certain insurance companies. (Id. Ex. E.) The release reserved to the Lewandowskis "claims for which any insurer other than [the named insurers] would be obligated to indemnify MM Home or for which MM Home shall be uninsured." (Id. at 2.)

Thereafter, MM Home Builders served a complaint against Granite State Insurance Company and Corporate 4. (Id. Ex. F.) The damages sought in that lawsuit were the same as those sought in the first lawsuit. (Id. at ¶¶ 5, 21, 25, 29

3

and 31.) Corporate 4 tendered the defense of this suit to its E&O insurance carrier, Endurance. Endurance notified Corporate 4 by letter dated June 7, 2010 that coverage was denied primarily on the mold exclusion contained in the policy. (Id. Ex. G.) MM Home Builders thereafter notified Endurance that it intended to enter into a *Miller-Shugart* settlement with Corporate 4. (Id. Ex. L.)

The *Miller-Shugart* agreement provides that MM Home Builders is liable for damages to the Lewandowskis for construction defects. (Id. Ex. H.) The agreement further provides that specific damages would be determined by a neutral fact finder, attorney Paul D. Peterson, and the parties agreed to be bound by Peterson's determination. (Id. ¶ 5.) Peterson determined that the damages were $1.8 million. (Id., Ex. I.) He did not, however, include an allocation between different types of alleged damages. (See id.)

## II. Current Action

In the action currently before the Court, MM Home Builders asserts that it is the assignee of Corporate 4 under the *Miller-Shugart* agreement and it is therefore entitled to seek a declaration of coverage under the E&O policy.

In the Complaint, MM Home Builders alleges that Granite States provided insurance coverage for the business activities of MM Home Builders at the times

4

relevant herein. (Comp. ¶ 4.) MM Home Builders further alleges that in 2007, it was discovered that the townhomes had major construction damage as a result of water infiltration in the wall cavities and sheathing of the buildings and that such damage was caused by negligence, departure of good building practices and breaches of warranties by MM Home Builders. (Id. ¶¶ 5-7.) Granite States denied coverage in the underlying action based on an exclusion in the relevant policy for multi-unit buildings. (Id. ¶ 11.) MM Home Builders alleges that Corporate 4, as its insurance agent for a number of years, was negligent in obtaining insurance that excluded multi-unit dwellings, and that MM Home Builders was damaged when construction defects were found in the townhomes in 2007 as determined by arbiter Paul D. Peterson. (Id. ¶¶ 24, 25.) MM Home Builders seeks damages in the amount of $1,825,000. (Id. ¶ 25.)

Endurance now moves for summary judgment on the basis that the mold exclusion in the E&O policy applies and therefore excludes coverage for the damages sought in this case, which arose from mold damage.

## III. Standard of Review

Minnesota law governs the interpretation of the policy at issue. W3i Mobile, LLC v. Westchester Fire Ins. Co., 632 F.3d 432, 436 (8th Cir. 2011). Under

Minnesota law, general contract principles apply to insurance policies. Id. (citing Carlson v. Allstate Ins. Co., 749 N.W.2d 41, 45 (Minn. 2008)). "The policy must be read as a whole, and unambiguous language must be accorded its plain and ordinary meaning." SCSC Corp. v. Allied Mutual Ins. Co., 536 N.W.2d 305, 311 (Minn. 1995) (citing Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co., 383 N.W.2d 645, 652 (Minn.1986)). Any ambiguity is construed in favor of the insured. Lott v. State Farm Fire & Cas. Co., 541 N.W.2d 304, 307 (Minn. 1995).

"[T]he initial burden of proof is on the insured to establish a prima facie case of coverage." SCSC Corp., 536 N.W.2d at 311 (citing Boedigheimer v. Taylor, 287 Minn. 323, 329, 178 N.W.2d 610, 614 (1970)) overruled on other grounds by Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 919 (Minn. 2009)). When an insurer denies coverage pursuant to an exclusion listed in the policy, the burden is on the insurer to show the applicability of the exclusion. Id., at 313.

## IV. Analysis

The E&O policy at issue includes the following mold exclusion:

> This Policy shall not apply to any Claim caused by, arising out of, relating to, resulting from, contributed to, or aggravated by any actual, alleged, or threatened discharge, dispersal, seepage, migration, release, growth, infestation, spread or escape of mold(s), mildew(s), fungi and/or spore(s) . .

(Nelson Aff., Ex. J.)

Minnesota courts broadly interpret the term "arising out of." See League of Minnesota Cities Ins. Trust v. City of Coon Rapids, 446 N.W.2d 419, 422 (Minn. Ct. App. 1989) (citing Assoc. Ind. Dealers, Inc. v. Mutual Serv. Ins. Co., 304 Minn. 179, 229 N.W.2d 516 (1975)) (defining "arising out of" as "originating from" or "having its origins in" "growing out of," or "flowing from."). Given such broad construction, Endurance argues that the mold exclusion applies to the claims asserted in this action, as the asserted damages arising from the negligent procurement of insurance flow from the damages incurred by the abatement of mold in the townhome project.

In Bd. of Regents of Univ. of Minn. v. Royal Ins. Co. of Am., 517 N.W.2d 888 (Minn. 1994), plaintiff sought to enforce an asbestos-related products liability settlement against an asbestos supplier's insurer. The insurer had denied coverage based on the pollution exclusion. The plaintiff had argued that as the underlying claims involved product liability, not pollution, the pollution exclusion did not apply. The Minnesota Supreme Court rejected the plaintiff's argument, finding that "the exclusion defines itself by characterizing the activity of the pollutant, not the activity of the insured polluter." Id. at 891.

7

Like the pollution exclusion at issue in Bd. of Regents, the mold exclusion at issue here is not defined by the activities of the insured. Rather, it is defined by the underlying claim - which is based on mold damages. See also SECURA Ins. Co. v. M.S.M., 755 N.W.2d 320, 327 (Minn. Ct. App. 2008) (finding that the "'arising out of' language is satisfied if there is a causal connection between the conduct identified in the exclusion and the injuries for which compensation is being sought."); W3i Mobile, LLC, 632 F.3d at 436-37 (finding that underlying claims "involved" the products sold by plaintiff, and that policy exclusion therefore applied). See also Homestead Ins. Co. v. Ryness Co., 851 F. Supp. 1441, 1444 (N.D. Ca. 1992); James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1275-76 (11th Cir. 2008); United States Fidelity & Guaranty Co. v. Korman Corp., 693 F. Supp. 253, 259 (E.D. Pa. 1988).

This broad interpretation of the mold exclusion also effectuates the intentions of the parties. Corporate 4 is an insurance agent that provides insurances services to clients in the construction business. Since providing insurance services would not be expected to generate mold, the common sense application of the mold exclusion in the E&O policy would be to prevent those in the construction business from shifting liability to their insurance agent's

8

professional liability insurer where it is discovered that they are not otherwise insured for mold-related damages.

MM Home Builder further asserts that the doctrine of reasonable expectations affords coverage to Corporate 4 because excluding coverage under the mold exclusion would result in one or two situations - either the exclusion is not expressive of the intent of the contracting parties or that the exclusion functions to vitiate coverage. MM Home Builder asserts that neither party intended that the mold exclusion would bar coverage for Corporate 4 failing to supply MM Home Builders adequate coverage. Further, if as Endurance has claimed the agents providing coverage to builders and contractors are at heightened risk of encountering liability arising from mold, then they certainly would not have left themselves open to such risk.

Minnesota courts narrowly apply the doctrine of reasonable expectations. Carlson v. Allstate, 749 N.W.2d 41 (Minn. 2008) (noting that the doctrine had only been applied where the exclusion from coverage was hidden). It is confined to exceptional circumstances when coverage is significantly different than what is reasonably expected and sufficient notice of this difference is lacking. SECURA, 755 N.W.2d at 323-24. It is not to be used to ignore a valid policy exclusion. Bd.

of Regents, 517 N.W.2d at 891. This case does not involve exceptional circumstances that would warrant the application of the reasonable expectations doctrine. The mold exclusion was not hidden - it was placed in a separate endorsement and was marked in bold and capital letters. (Nelson Aff., Ex. J.) In addition, the language of the mold exclusion is clear and unambiguous.

Finally, MM Home Builders argues that the doctrine of illusory coverage applies here as Corporate 4 paid a premium for protection against negligent errors and omissions. This doctrine applies where the evidence shows that part of the premium is "specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." Jostens, Inc. v. Northfield Ins. Co., 527 N.W.2d 116, 119 (Minn. Ct. App. 1995). There is no evidence in the record that a specific portion of the premium paid by Corporate 4 to Endurance was allocated to cover negligent procurement claims that arose from damages caused by mold due to construction defects. Further, application of the mold exclusion does not render coverage under the E&O policy to be functionally nonexistent - it simply excludes coverage for damages arising from mold.

As the language of the mold exclusion in the E&O policy is clear and ambiguous, and because the underlying claims "arise out of" mold or fungal growth, there is no coverage under the E&O policy.

IT IS HEREBY ORDERED that Defendant Endurance American Specialty Insurance Company's Motion for Summary Judgment [Doc. No. 12] is **GRANTED.** This matter is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: March 18, 2013

          s/ Michael J. Davis
          Michael J. Davis
          Chief Judge
          United States District Court